## ROBERT BLACK *v.* THE STATE.

1. ASSAULT WITH INTENT TO MURDER — FACT CASE. — Note evidence held insufficient to support a conviction for assault with intent to murder.

2. EVIDENCE. — In a trial for an assault with intent to murder one M., the State's evidence showed that the conflict was precipitated by M., and the defence proposed to prove that M., immediately on its conclusion, declared that but for his wife's dissuasion he would have brought on the difficulty sooner, and that he had started with his gun to find the defendant and settle the difficulty when his wife followed and brought him back. *Held,* error to exclude these declarations; they were competent as part of the *res gestæ,* and also as *indicia* of the *animus* of M., the prosecuting witness and party alleged to have been assaulted.

APPEAL from the District Court of Cass. Tried below before the Hon. B. T. ESTES.

The opinion narrates the evidence on which the appellant was found guilty of an assault with intent to murder, and adjudged to a term of two years in the penitentiary. The second head-note embodies the substance of the excluded evidence referred to in the opinion.

*George P. Finlay,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

WHITE, P. J. On Sunday before the encounter out of which this prosecution grew, the appellant (Black) and Martin, the alleged injured party, had a misunderstanding at Martin's house, which culminated in Martin's ordering the two Black boys off of his premises, which order they obeyed, Martin having picked up an iron wedge and stick with which, doubtless, to enforce obedience in case of refusal on their part. As they retired, the Black boys told Martin that if he came up into their neighborhood they would whip him and kill him.

With this introductory explanation, we can perhaps narrate the parts of the subsequent difficulty in no better

manner than in the strong and vivid language of Martin himself, who appeared at the trial and testified for the State. He says: " On the following Saturday, James Bell came by my house and wanted me to go fishing on Sulphur, which was about one mile distant. I told him I could not go. He, Bell, borrowed some fish-hooks from me. Late in the evening I heard some one halloo about one hundred and fifty yards from my house, in the direction of Sulphur. It was a crowd of young men coming from fishing, consisting of James Bell, Joe Bell, Thomas Dyer, Joe Black, Robert Black, and George Black. James Bell got over the fence and came in the back door, to return the fish-hooks and get some water, as he said. The balance of the crowd went on round the fence. He saw a pistol in Robert Black's hands when he came up. [This is denied by most of the witnesses.] When Robert Black got near the front of the gate he stopped and cocked the pistol and put his hand behind him, and threw his hat on the ground, stamped, blowed like a mustang, and said he was a ' man-eater,' — looking at witness. Martin was sitting on a chair in the yard. Martin pulled a pistol out of his boot-leg, got up, and, remarking ' Robert, I know what you are after, and if you are ready, I am,' stepped a few steps to a tree and fired at Robert Black. Black stepped to a sapling near him, and as he did so, raised his pistol and fired at witness. *When he, witness, fired at Black, Black had his pistol behind him; did not know that Black was making any effort to use his pistol.* I expected him to shoot, and moved off to one side to keep him from shooting into the house, which was in range of where I was sitting. Immediately after witness shot at Black, Black returned the fire. Witness shot at Black the second time, and snapped once. Robert Black's pistol was a derringer. The second shot I made hit the tree that Black was standing behind. When I was snapping at Black, just as it snapped at the third attempt, Joe Bell jumped over the fence and caught my pistol. We

had a scuffle over it; don't know what Robert Black was doing when Joe Bell had hold of me. While we was in the scuffle George Black run up to me and stabbed me three times with a dirk. I had my head down, and did not see him. I was trying to break my pistol, so that they could not use it against me. Joe Bell turned me loose and caught George Black. At this time my son had a gun, and I hallooed and told him to shoot the Blacks. James Bell had hold of the gun. I tried to get hold of the gun and shoot the Black boys. Did get it, and went round the house; had the gun to my face to shoot, but was preverted by by-standers. The dirk George Black had was five and a half inches, with a cross-piece between the handle and the blade. He give me a bad wound on the right shoulder; had a doctor with me. Robert Black's pistol was a derringer, mine a five-shooter. I hit the tree that Robert Black was behind, the second shot. As George Black walked off he said, 'I think I have done the work for you, Jerry Martin.' "

Such is the testimony of the principal State's witness. All the other parties who witnessed the transaction testified that Martin fired first, and made repeated efforts to fire again after his pistol snapped, and it failing him, that he tried to get hold of and use the gun. Their testimony is much stronger in Black's behalf than in Martin's, as detailed above. With this testimony of Martin, if it stood by itself, alone and uncontradicted, we do not think defendant (if not entirely justifiable on self-defence) could possibly be guilty of an assault with intent to murder. If the facts stated are true, he was in a public road, and he was the assaulted and not the assaulting party. If he used insulting words or abusive language towards Martin, this would and did not justify Martin in drawing from his bootleg a pistol and firing upon him. For aught that appears, the matter would have stopped when defendant declared himself " a man-eater," had not Martin been so ready to

accept the gage of battle (if such it could be considered), and, without pausing for further developments, opened fire upon him.

The objection to the charge of the court is that it was calculated to impress the jury too prominently with the belief that, in the opinion of the judge, the Blacks came to or by Martin's house in pursuance of a conspiracy to kill him or do him some serious bodily harm. The question as to whether their return by his house was an accident, or was by a road they would naturally travel in going from the fishing-ground to their respective homes, was not submitted, or so incorporated into the charge as to relieve it of liability to create the impression indicated.

We think the court also erred in excluding the evidence set out in the bill of exceptions as to the declarations of Martin, made at the time, and on the ground just after the difficulty occurred. These declarations were *res gestœ*, and, besides, tended to show the *animus* of Martin in the transaction. *Foster* v. *The State*, decided at the present term, *ante*, p. 248.

Because the charge of the court was calculated to mislead the jury, and because the court erred in excluding legitimate evidence, and because, in the opinion of this court, the verdict and judgment are against the evidence, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*